# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

KATHLEEN SUGGS            CIVIL ACTION NOS. 04-0059 & 04-0060

VERSUS            JUDGE S. MAURICE HICKS, JR.

JAMES HENRY STANLEY AND       MAGISTRATE JUDGE HORNSBY
DOROTHY JEAN WICKER STANLEY

## MEMORANDUM RULING

Before the Court are two appeals, pursuant to 28 U.S.C. § 158(a), filed by Kathleen Suggs ("Suggs") from orders of the United States Bankruptcy Court for the Western District of Louisiana. See Record Document 1 in Civil Action Nos. 04-0059 & 04-0060. The first order, filed on October 17, 2003, overruled Suggs' objection to the confirmation of James Henry Stanley's and Dorothy Jean Wicker Stanley's ("the Stanleys") Chapter 13 bankruptcy plan and also denied Suggs' motion to convert the Stanleys' Chapter 13 bankruptcy proceeding to a Chapter 7 proceeding. The second order, filed December 2, 2003, granted the confirmation of the Stanleys' modified Chapter 13 plan and again overruled Suggs' objection to the confirmation. Suggs timely appealed both orders. The appeals were consolidated on April 8, 2004. See Record Document 21 in Civil Action No. 04-0059.[1]

Based on the following, the bankruptcy court's order of October 17, 2003, which denied Suggs' motion to convert the case and overruled her objection to confirmation, and the order of December 2, 2003, which overruled Suggs' objection to confirmation and granted confirmation of the Stanleys' Chapter 13 bankruptcy plan, are **REVERSED**.

---

[1]Civil Action No. 04-0059 was designated as the lead case. Thus, any future reference to a Record Document refers to a document in the record of Civil Action No. 04-0059.

Accordingly, this matter is **REMANDED** to the bankruptcy court for further proceedings, specifically on the issue of good faith, consistent with this Memorandum Ruling.

## I. BACKGROUND

Suggs brought a defamation action in Arkansas federal court against Dorothy Stanley ("Stanley") and her sister Betty Hendricks ("Hendricks"). Stanley and Hendricks were the sisters of Suggs' deceased companion, Gilbert Wicker. The defamation action arose from, *inter alia*, allegations and statements made by Stanley to the police regarding Suggs' alleged involvement in Gilbert Wicker's death. Suggs also alleged that Hendrix conspired with Stanley in the defamatory acts. The Arkansas federal jury ruled in favor of Suggs, finding that Stanley and Hendricks were liable, as joint tortfeasors, for malicious and intentional acts of defamation against Suggs. The jury awarded Suggs a total of $50,000 in damages ($10,000 compensatory and $30,000 punitive damages against Stanley; $5,000 compensatory and $5,000 punitive damages against Hendricks). Stanley and Hendricks appealed the jury verdict. On March 31, 2003, the United States Court of Appeals for the Eighth Circuit affirmed the jury verdict. See Suggs v. Stanley, 324 F.3d 672 (8th Cir. 2003). The judgment against Stanley and Hendricks became final on April 15, 2003.

Also on April 15, 2003, the Stanleys filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code. Suggs was an interested party in the Stanleys' Chapter 13 bankruptcy proceeding, as she held a money judgment against Dorothy Stanley in excess of $50,000 as a result of the aforementioned jury verdict.

On May 30, 2003, Suggs filed an objection to confirmation of the Stanleys' original

Chapter 13 bankruptcy plan on the grounds that the plan was a "continuation of the malice of Dorothy Stanley against Kathleen Suggs." Record Document 16 at 3. Suggs argued that the Stanleys' plan had not been proposed in good faith and that confirmation should be denied pursuant to 11 U.S.C. § 1325(a)(3).[2] Suggs also filed a motion to convert the Stanleys' Chapter 13 bankruptcy proceeding to a Chapter 7 proceeding on the same grounds. On October 17, 2003, the bankruptcy court held both a confirmation hearing and a hearing on the motion to convert the case. The bankruptcy court ruled that the Stanleys had proposed their Chapter 13 bankruptcy plan in good faith; thus, the bankruptcy court overruled Suggs' objection to confirmation and denied Suggs' motion to convert the case.[3] Further, the bankruptcy court allowed the Stanleys fifteen days to modify their Chapter 13 plan prior to confirmation.

On November 3, 2003, the Stanleys filed a "Modification Of Chapter 13 Plan Before Confirmation." Suggs again objected to the modified plan on the grounds that the Stanleys' modified plan had not been proposed in good faith and that confirmation should be denied pursuant to 11 U.S.C. § 1325(a)(3). On December 2, 2003, the bankruptcy

---

[2]Section 1325(a)(3) of the Bankruptcy Code states that "the court shall confirm a plan if . . . the plan has been proposed in good faith and not by any means forbidden by law."

[3]Suggs' motion to convert the proceeding to a Chapter 7 proceeding was based on 11 U.S.C. § 523(a)(6), which states:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

Suggs argued that the Arkansas federal court judgment against Dorothy Stanley was covered by the provisions of section 523(a)(6); thus, such judgment would not be dischargeable in a Chapter 7 proceeding.

court overruled Suggs' objection to confirmation and confirmed the Stanleys' modified Chapter 13 plan.

Suggs timely appealed the bankruptcy court's orders of October 17, 2003 and December 2, 2003. Both appeals are now properly before this Court.

## II. LAW AND ANALYSIS

### A. Jurisdiction and Standard of Review.

This Court has jurisdiction over Suggs' appeals from the bankruptcy court's orders pursuant to 28 U.S.C. § 158(a). In reviewing a decision of the bankruptcy court, this Court functions as an appellate court and applies the standards of review generally applied in a federal court of appeals. See Matter of Webb, 954 F.2d 1102, 1103-04 (5th Cir. 1992). Conclusions of law are reviewed de novo. See Matter of Herby's Foods, Inc., 2 F.3d 128, 131 (5th Cir. 1993). Findings of fact are not to be set aide unless clearly erroneous. See id. at 130-31. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." Matter of Missionary Baptist Foundation of America, 712 F.2d 206, 209 (5th Cir. 1983).

As applied to the instant matter, "a factual finding that a [bankruptcy] petition was not filed [or a plan was not proposed] in good faith is subject to the clearly erroneous standard of review. If this finding is based on an incorrect statement of law, however, [the] review [is] de novo." Matter of Elmwood Dev. Co. v. Gen. Elec. Pension Trust, 964 F.2d 508, 510 (5th Cir. 1992); see also In re Caldwell, 895 F.2d 1123, 1127 (8th Cir. 1990) (stating that "[l]ike the district court, we review the bankruptcy court's determination of good

faith for clear error."

## B.    Issues on Appeal.

In her appellant brief, Suggs presented multiple issues on appeal, most of which revolve around the determination of good faith under 11 U.S.C. § 1325(a)(3). See generally Record Document 16 at 1-3. Simply stated, the crux of Suggs' arguments on appeal is that the bankruptcy court's "isolation of various circumstances presented by Suggs [as evidence of bad faith] instead of treating each as a part of an interrelated whole, [is] contrary to the totality of circumstances test as set by the Fifth Circuit." Id. at 5. Specifically, Suggs contends that the bankruptcy court failed to correctly apply the totality of the circumstances standard in considering the Stanleys' good faith and failed to consider the underlying judgment against Dorothy Stanley for defamation as evidence of proven malice. See id.[4] Thus, the main focus of this Memorandum Ruling, just as it is the main focus of Suggs' appeal, is whether the Stanleys proposed their Chapter 13 bankruptcy plan in good faith.

## C.    Section 1325(a)(3) - Good Faith.

"Section 1325(a)(3) of the Bankruptcy Code provides that 'the court shall confirm

_____

[4]Suggs also raised additional issues on appeal that this Court has either discounted or did not reach due to its analysis of good faith. For instance, Suggs appealed the bankruptcy court's treatment of the Stanleys' witness, psychiatrist Dr. Paul Ware. See Record Document 16 at 41. Suggs argued that allowing Dr. Ware to testify prior to the conclusion of Suggs' case in chief created an unfair burden and denied her a fair trial. See id.

As stated above, the key issue on appeal is whether the Stanleys proposed their bankruptcy plan in good faith. Thus, because this Memorandum Ruling focuses on good faith, this Court did not find it necessary to address the issue of the bankruptcy court's accommodation of Dr. Ware. Notwithstanding, this Court notes that it was within the bankruptcy court's discretion, and it is a common practice within this district, to accommodate a witness such as Dr. Ware.

a plan if,' in addition to other requirements, 'the plan has been proposed in good faith and not by any means forbidden by law.'" Matter of Chaffin, 816 F.2d 1070, 1073 (5th Cir. 1987) ("Chaffin I"). The term "good faith" is not defined in the Bankruptcy Code; hence, considerable case law has developed over the meaning of good faith and the test to be In employed for making a good faith determination. The Fifth Circuit has "established a 'totality of the circumstances' test under which we should consider such factors as the reasonableness of the proposed repayment plan and whether the plan shows an attempt to abuse the spirit of the Bankruptcy Code." Id.

The totality of the circumstances test "exacts an examination of all the facts in order to determine the bona fides of the debtor." Id. at 1074. In ascertaining if "a petition was filed with the requisite good faith, the court must examine the facts and circumstances germane to each particular case." Elmwood, 964 F.2d at 510. Simply put, "the good faith inquiry under § 1325(a)(3) requires a careful examination of the totality of the circumstances surrounding the debtor's Chapter 13 filing." Matter of Chaffin, 836 F.2d 215, 217 (5th Cir. 1988) (Chaffin II).

Under section 1325(a)(3), the debtor, i.e., the Stanleys, bears the burden of proof as to the good faith issue. See In re Dicey, 312 B.R. 456, 458 (Bankr. D.N.H. 2004); see also In re Scotten, 281 B.R. 147, 149 (Bankr. D.Mass. 2002); In re Padilla, 213 B.R. 349 (9th Cir.BAP 1997). "And when a debtor seeks the Chapter 13 discharge to discharge debt that would remain undischarged in a Chapter 7, that burden is especially heavy." Id. In Chaffin I, the Fifth Circuit specifically discussed good faith in the context of a debt that was not dischargeable under Chapter 13, stating that "[a]lthough the debtor's motive in invoking Chapter 13 solely to obtain discharge of a previously non-dischargeable debt, as well as

the circumstances under which that debt arose, may be factors to consider as part of the totality of the circumstances, they cannot, as a matter of law, suffice to show bad faith." Chaffin I, 816 F.2d at 1074. Further, the Fourth Circuit has acknowledged that while "Chapter 13 exists to allow an individual debtor, who is in financial difficulty, whatever the cause, to develop a repayment plan to serve as a flexible vehicle for debt repayment[,] . . . the good faith requirement acts as a safety valve keeping debtors from the benefits of Chapter 13 who would misuse them." In re Otero, 48 B.R. 704, 707 (Bankr. E.D. Va. 1985). The Fourth Circuit further reasoned that "[a] debtor's pre-petition conduct is no longer insulated from the court's scrutiny and dishonest debtors may no longer seek Chapter 13 protection indiscriminately." Id.

## D. Bankruptcy Court's Application of the Totality of the Circumstances Standard.

During the October 17, 2003 hearing, the bankruptcy court acknowledged that Suggs' objection to the Stanleys' Chapter 13 bankruptcy plan was based "primarily on the good faith issue." Transcript of Confirmation and Motion Hearing of October 17, 2003 ("Transcript") at 290. The bankruptcy court also recognized Suggs' objections relating to the Stanleys' disposable income and liquidation analysis; however, the court noted that those issues go along "with [the] good faith issue." Id. at 291. The bankruptcy judge saw his task as "mak[ing] sure that . . . Mr. and Mrs. Stanley [came] to this Court with clean hands. Now that does not mean that their hands cannot have been dirtied before they came to this Court; it just means they have to come into this Court with clean hands. They have come in here in good faith." Id. at 293. Ultimately, the bankruptcy court overruled Suggs' objection to confirmation, reasoning:

> I don't see Mr. and Mrs. Stanley's bankruptcy filed in bad faith . . . The issue

before this Court is that they came here to continue with the wrong. They came here because they had not place else they could go and continue to live, pay their bills, and to support their dependents. That's what this Court is for. . . . The indicia that [Suggs] argues of bad faith, there is a lot of smoke. . . . It's just clear that when you . . . clear the smoke, there's no real fire.

Id. at 312-13.

In making its October 2003 ruling on the good faith issue, the bankruptcy court addressed each of Suggs' arguments as to bad faith *individually*.[5] Suggs' first argument as to evidence of bad faith was the Stanleys' prior Chapter 7 bankruptcy in 1990. See id. at 293. The bankruptcy court found that the prior bankruptcy should not be considered as evidence of bad faith, as the Stanleys were not "recidivists." Id. Specifically, the bankruptcy court stated that the Stanleys "filed a bankruptcy under Chapter 7 in 1990, they got their discharge, they made their fresh start. They started over. They encountered financial problems again over nine to ten years later. It does not make them in bad faith." Id. at 293-94.

Suggs' second argument relating to bad faith was treated a bit more favorably by the bankruptcy court, but was ultimately discounted. Suggs argued that the timing of the Stanleys' petition for Chapter 13 bankruptcy was suspect, as the Stanleys filed for bankruptcy on the day that the judgment against Dorothy Stanley became final.[6] See id.

---

[5]Section III(D) of this Memorandum Ruling outlines the bankruptcy court's hearing of October 17, 2003, in which the court overruled Suggs' objection to confirmation and denied the motion to convert the case. However, the analysis likewise applies to the bankruptcy court's December 2, 2003 ruling, as Suggs again objected to confirmation of the Stanleys' modified Chapter 13 plan on the same "good faith" grounds and the bankruptcy court again overruled her objection.

[6]On March 31, 2003, the United States Court of Appeals for the Eighth Circuit affirmed the jury verdict. See Suggs v. Stanley, 324 F.3d 672 (8th Cir. 2003). Because

at 294. The bankruptcy court noted that this "was a very good argument," as even Dorothy Stanley admitted that she had filed the bankruptcy because she lost the appeal. See id. However, the bankruptcy court ultimately concluded that the timing of the bankruptcy petition did not mean that the Stanleys filed for bankruptcy out of malice. See id. Rather, the bankruptcy court stated, "[Y]es, the bankruptcy was filed because the appeal was not successful, but the bankruptcy was filed because there was no way that they could continue to pay their obligations, survive, provide for their dependents and address a substantial obligation." Id. at 295.[7]

Suggs' also argued that the timing of the Stanleys' home equity mortgage shortly after Dorothy Stanley was deposed for the civil suit in Arkansas federal court was evidence of bad faith. See Transcript at 296; Record Document 16 at 38-39. Again, the bankruptcy court discredited this argument, stating: "Did they do that to strip the equity of their home, to put it beyond the reach of Ms. Suggs? If you're saying they used that money in part to defend a lawsuit that Ms. Suggs had filed against them, you could jump to that conclusion but I won't." Transcript at 297. The bankruptcy judge believed that the Stanleys did not even know they were going to file for bankruptcy at the time of the home equity loan; thus, the home equity loan did not indicate malice. See id. at 305, 306.

_____

neither Stanley nor Hendricks filed for rehearing, the judgment became final on April 15, 2003.

[7]In her appeal brief, Suggs further argues that "the timing of the petition goes hand in hand with the [Stanleys'] determination not to pay" the debt to Suggs. Record Document 16 at 21. Suggs contends that this point was brought to the attention of the bankruptcy court, as Dorothy Stanley testified in the October 17, 2003 hearing that she "never made any payment of any kind at all" to Suggs. Transcript at 130. Suggs argues that this admission further solidifies her position that the Stanleys filed their bankruptcy petition on April 15, 2003 "in order to keep Suggs from obtaining any secured status for the debt." Id.

Suggs also focused on the fact that the judgment against Dorothy Stanley would not be dischargeable in a Chapter 7 bankruptcy proceeding. <u>See id.</u> at 297. The bankruptcy judge remarked that this was "a good argument if I wasn't a bankruptcy judge." After stating that he had reviewed the most recent Supreme Court and Fifth Circuit case law on the issue, the bankruptcy judge acknowledged that ruling on this issue was "not an easy call." <u>Id.</u> at 298. But, again, the bankruptcy court gave little weight to Suggs' argument on this point, finding that there was a "distinct possibility" that the judgment would be dischargeable in a Chapter 7 proceeding. <u>Id.</u> at 298-99.

Suggs also argued that Dorothy Stanley's decision to quit her job within two weeks of the jury verdict in the Arkansas federal court defamation lawsuit and her failure to seek employment were evidence of bad faith. <u>See</u> Record Document 16 at 22. The bankruptcy court addressed Suggs' "diminished income" argument, but concluded that such argument did not stand up to the explanations given by the Stanleys. Transcript at 303. In making this ruling, the bankruptcy court seemed to give significant credence to the testimony of the Stanleys' witness, psychiatrist Dr. Paul Ware. <u>See id.</u> at 299. Dr. Ware testified that the Stanleys "were very much overburdened with responsibilities." <u>Id.</u> at 299. Further, the bankruptcy court noted that Mrs. Stanley stated that if she was successful in getting her grandson into a children's home, then she would return to work, but not outside of the home, <u>i.e.</u>, she would work for her husband's business. <u>See id.</u> at 301-02.

The bankruptcy court also addressed the fact that the Stanleys had "renewed [their] mortgage right before the bankruptcy." <u>Id.</u> at 306. Again, the bankruptcy court gave little weight to this fact as an indicator of bad faith since the Stanleys' purported reason for the refinancing was to reduce the monthly payment and "it did." <u>Id.</u> The bankruptcy court

found that the refinancing was "not done in contemplation of bankruptcy."  Id.

The bankruptcy court also rejected Suggs' "bad faith" arguments pertaining to mortgage applications, financial documents, the Stanleys' retirement plan, and liquidation analysis.  Suggs argued that a loan application, which was completed by the Stanleys in February 2003, containing false information was evidence of bad faith.  See Record Document 16 at 32.  The application asked that all outstanding judgments, pending litigation, and creditors be listed.  See id. at 34.  The Stanleys allegedly answered "no" to the aforementioned questions.  See Transcript at 306.  Further, Suggs argued that the Stanleys were attempting to avoid informing the mortgage company that they were considering bankruptcy.  See id. at 309.  Yet, the bankruptcy court found Suggs' arguments to be unpersuasive because the loan application faxed to Suggs' counsel was unsigned.  See id. at 306.  Further, the bankruptcy court found that the Stanleys were not misleading the mortgage company because they did not know in February 2003 that they would be filing bankruptcy in April 2003.  See id. at 310.

Suggs contends that the Stanleys' refusals, denials, and duplicity in failing to provide financial documents is also evidence of bad faith.  See Record Document 16 at 30.  The bankruptcy court again discounted this argument and obviously found Dorothy Stanley's testimony that she routinely destroyed tax documents, that she had stopped keeping paper records and had begun storing information on the computer, and that her computer's hard drive failed, to be credible.  See Transcript at 307, 308.  The bankruptcy judge also stated that he was satisfied as to the Stanleys reasons for not producing other financial documents to Suggs.  See id. at 309.

Suggs also argued that the portion of the Stanleys' Chapter 13 plan, under which

they were making monthly repayments for a retirement loan and benefitting their retirement plan interests in an amount that was substantially higher than their monthly payments to unsecured creditors, was evidence of bad faith. Record Document 16 at 29. The bankruptcy judge gave no credence to this argument as he "did not see [evidence that the Stanleys had] put large sums of money into the retirement on the eve of bankruptcy" and he also noted that he had sustained the trustee's objection to cut monthly payments toward retirement benefits. Transcript at 312, 314. Further, the bankruptcy court found no evidence that the Stanleys hid any assets in their liquidation analysis. See id. at 313.

Finally, as to Suggs' motion to convert the Stanleys' Chapter 13 bankruptcy proceeding to a Chapter 7 proceeding, the bankruptcy judge stated:

> I am not going to convert Mr. and Mrs. Stanley's Chapter 13 case today. I don't think the grounds that are set forth in the motion, which are basically the same grounds that were set forth in the objection, I don't think those grounds are present today for a conversion under 11 U.S.C. Section 1307. That does not mean that they might not be present at a later date.

Transcript at 315. Thus, from this statement, it is clear that the bankruptcy court did not reach the "merits" of Suggs' motion to convert; rather, once the bankruptcy court ruled that the Stanleys' plan had been proposed in good faith, it simply denied the motion to convert.

## E. Bankruptcy Court's Ruling that the Stanleys Proposed their Chapter 13 Plan in Good Faith was Clearly Erroneous.

As stated by the Fifth Circuit in Elmwood, a factual finding that a bankruptcy plan was not proposed in good faith is subject to the clearly erroneous standard of review. See Elmwood, 964 F.2d at 510. Thus, the bankruptcy court's finding that the Stanleys' Chapter

13 plan was proposed in good faith is subject to the clearly erroneous standard of review.[8]

After reviewing the record and applicable case law, this Court finds that the bankruptcy court's factual finding that the Stanleys proposed their Chapter 13 plan in good faith was clearly erroneous. While there may be evidence in the record to support such a factual determination, this Court is left with a firm and definite conviction that a mistake has been committed due to the bankruptcy court's isolation of each circumstance, as compared to a careful examination of the totality of the circumstances, surrounding the Stanleys' Chapter 13 bankruptcy plan. See Missionary Baptist Foundation of America, 712 F.2d at 209; Chaffin II, 836 F.2d at 217.

As outlined in section III(D) of this Memorandum Ruling, Suggs presented at least seven "circumstances" as evidence that the Stanleys did not propose their Chapter 13 bankruptcy plan in good faith. Yet, instead of actually considering the totality of these circumstances, the transcript of the October 17, 2003 hearing clearly establishes that the bankruptcy court considered each of these circumstances on its own. Such application of the totality of the circumstances standard prevented the bankruptcy court from truly determining not only the bona fides of the debtors, but also whether the proposed Chapter

---

[8]Suggs argues that the bankruptcy court's finding is subject to *de novo* review because the ruling was based on an incorrect statement of law. See Elmwood, 964 F.2d at 510. This Court disagrees, as there is nothing in the record indicating that the bankruptcy court based its ruling on an incorrect statement of law. In fact, it appears that the bankruptcy court did base its ruling on the totality of the circumstances standard set forth by the Fifth Circuit. Yet, as set forth more fully in section III(E) of the instant Memorandum Ruling, it is clear that the bankruptcy court incorrectly applied the totality of the circumstances standard in that it isolated the factual circumstances surrounding the Stanleys' Chapter 13 plan rather than considering the totality of the circumstances as a whole. However, in an abundance of caution, this Court is applying the clearly erroneous standard of review, a more stringent standard, in the instant ruling.

13 plan was an attempt to abuse the spirit of the Bankruptcy Code.  See generally Chaffin I, 816 F.2d at 1073, 1074.  Thus, it is not surprising that the bankruptcy court concluded that each circumstance surrounding the Stanleys' bankruptcy plan considered on its own did not suggest bad faith.  Conversely, this Court finds that "a collation of [the] factors [surrounding the Stanleys' proposed Chapter 13 bankruptcy plan], rather than any single datum, controls resolution of [the good faith] issue" and further finds that all of the circumstances surrounding the Stanleys' proposed plan clearly lead to the conclusion that the Stanleys have not met the good faith requirement set forth in section 1325(a)(3).

This Court is particularly concerned with two inter-related circumstances argued by Suggs as evidence of bad faith – the timing of the Stanleys' bankruptcy petition and the fact that the judgment against Dorothy Stanley is likely not dischargeable in a Chapter 7 bankruptcy proceeding.  It is undisputed that the Stanleys filed for bankruptcy relief on the day that the judgment against Dorothy Stanley became final.  Even Dorothy Stanley herself admitted that she had filed for bankruptcy because she lost the appeal.  While there is no Fifth Circuit case law specifically addressing this precise issue, there is ample persuasive case law on point.  Other courts have reasoned:

> Seeking Chapter 13 relief to avoid or lessen the effects of state court litigation is not 'bad faith constituting unfair manipulation of the Bankruptcy Code' per se.  Nevertheless, the Debtor's motivation in seeking chapter 13 relief is a factor that must be considered when determining good faith, and where a debtor's behavior exhibits **a pattern of manipulation**, such conduct should not be rewarded in bankruptcy.  (Emphasis added).

In re Banks, 248 B.R. 799, 805 n.2 (8th Cir. BAP 2000); see also In re Zaleski, 216 B.R. 425, 430 (Bankr. D.N.D. 1997) (stating that a debtor's motivation and sincerity in seeking Chapter 13 relief is appropriate for examination).  In examining good faith, other courts

have also considered whether debtors intended to defeat underlying litigation by filing for bankruptcy. See In re Gress, 257 B.R. 563, 567 (Bankr. D.Mont. 2000). Here, this Court finds that the evidence clearly indicates that the Stanleys, namely Dorothy Stanley, are not "honest but unfortunate" debtors that the Bankruptcy Code is intended to protect. Id. In fact, this Court believes that the timing of the Stanleys' bankruptcy petition, in conjunction with the other "bad faith" circumstances argued by Suggs, clearly suggests an inference of dishonesty to be drawn.

Along those same lines, in Chaffin I, the Fifth Circuit acknowledged that "[a]lthough the debtor's motive in invoking Chapter 13 solely to obtain discharge of a previously non-dischargeable debt, as well as the circumstances under which that debt arose, *may be factors to consider as part of the totality of the circumstances*, they cannot, as a matter of law, suffice to show bad faith." Chaffin I, 816 F.2d at 1074. In Zaleski, the bankruptcy court noted that "although . . . the fact that a debt may be nondischargeable in a Chapter 7 should not be a sole focus of the inquiry nor should it be determination of the issue, the fact that Chapter 13 grants a more liberal discharge (sometimes called a 'super discharge') does cause the court to consider the type of debts being discharged and whether they emanate from pre-petition fraud." Zaleski, 216 B.R. 425, 430 (Bankr. D.N.D. 1997). There is also persuasive case law standing for the principle that "when a debtor seeks the Chapter 13 discharge to discharge debt that would remain undischarged in a Chapter 7, that burden is especially heavy." Dicey, 312 B.R. at 458. Further, the Fourth Circuit has stated that "a debtor's pre-petition conduct is no longer insulated from the court's scrutiny and dishonest debtors may no longer seek Chapter 13 protection indiscriminately." Otero, 48 B.R. at 707. Notwithstanding, this Court is cognizant of the

Fifth Circuit's directive that "[d]ebtors proposing some payment under Chapter 13 are not to be treated more harshly than those opting for a Chapter 7 liquidation." Public Finance Corp. v. Freeman, 712 F.2d 219, 221 (5th Cir. 1983).

The transcript from the October 17, 2003 hearing evidences that the bankruptcy court considered the most recent Supreme Court and Fifth Circuit case law on the issue of whether the judgment against Dorothy Stanley would be dischargeable in a Chapter 7 proceeding.[9] The bankruptcy judge remarked that this was "not an easy call," specifically stating:

> "I would have to make a finding, if we were in Chapter 7 and if you file a[n] exception under [section] 523(a)(6), . . . that not only was the letter intentionally written, not only were the phone calls intentionally made, but Mrs. Stanley either knew or was substantially certain to have know that those acts would have caused injury to [Suggs]. . . . I think you would be able to prove that she knew she was writing those letters. She knew that those acts were being taken. She did them intentionally. . . . But was she certain or substantially [certain] . . . that letter and phone call would cause injury to [Suggs]? I don't know the answer to that question today. I may have to, if their Chapter 13 is not successful and the case converts to a 7, I may have to find that out; I may have to go through that record and I may have to allow Ms. Suggs and others to come in and give me testimony. But that's not where we are today. Not dischargeable in Chapter 7. And I put a big question mark by that. There is a distinct possibility it would be. It would require trial in any event.

Transcript at 298-99. Based on this reasoning, the bankruptcy court discredited Suggs' argument that the fact that the judgment against Dorothy Stanley would not be dischargeable in a Chapter 7 proceeding was evidence of bad faith.

_____

[9]The Fifth Circuit held that "the test for willful and malicious injury under Section 523(a)(6) . . . is condensed into a single inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor. . . . A debtor must commit an intentional or substantially certain injury in order to be deprived of a discharge. A debt is not excepted from discharge if the debtor has committed a willful or knowing act." In re Williams, 337 F.3d 504, 509 (5th Cir. 2003).

Conversely, Suggs continues to argue that under 11 U.S.C. § 523(a)(6), the Arkansas federal court judgment against Dorothy Stanley would not be dischargeable in a Chapter 7 proceeding, as it was a "debt for willful and malicious injury by the debtor to another entity or to the property of another entity." See 11 U.S.C. § 523(a)(6). Further, Suggs contends that the bankruptcy court's rejection of the underlying Arkansas federal court judgment was erroneous, as she argued that "the [Arkansas federal court] judgment res judicata, collateral estoppel . . . show[ed] that this issue of malice was decided."[10] Transcript at 242.

Conversely, the Stanleys argued at the October 2003 hearing that because Mr. Stanley was not a party to the Arkansas federal court litigation, res judicata, as stated by Arkansas law, did not apply to this case. See id. at 245. As to Mrs. Stanley, the Stanleys maintained that even though she was a party to the federal court litigation, "that [litigation] had nothing to do necessarily with the issues here." Id. Simply put, the Stanleys contend that the record of the Arkansas federal court litigation is not proper "evidence in chief in this case." Id. at 246.

There is no dispute that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they

_____

[10]During the October 17, 2003 hearing, the bankruptcy court did not allow Suggs to introduce the entire record of the defamation lawsuit from Arkansas federal court. See Transcript at 31-32. Specifically, the bankruptcy judge stated that he would not allow Suggs "to introduce into evidence document[s] that[] [are] volumes long that [he] would be required to read because it's [introduced] into evidence." Id. at 32. Instead, the bankruptcy court allowed Suggs to introduce a letter, written by Dorothy Stanley to the Little Rock Police Department, that questioned the circumstances surrounding Gilbert Wicker's death. See id. at 32-33, 38-40. The bankruptcy court further reasoned "that the letter indicates [Dorothy Stanley] believes foul play was involved in her brother's death" and that Suggs was involved in Wicker's death. Id. at 39-40.

have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738.  Likewise, there is no doubt that the United States Court of Appeals for the Eighth Circuit affirmed the Arkansas federal district court's defamation judgment against Dorothy Stanley, stating "there was sufficient evidence under the requirements of Arkansas law to support the jury findings that [Dorothy Stanley and Betty Hendricks] had defamed [Suggs]." Suggs v. Stanley, 324 F.3d 672, 682 (8th Cir. 2003). The real issue is whether issue preclusion/collateral estoppel[11] truly applies in this case, as Mr. Stanley was not a party to the Arkansas federal court litigation and the defamation as defined by Arkansas state law may not be synonymous with a willful and malicious injury under Section 523(a)(6) of the Bankruptcy Code.  Notwithstanding, this Court finds that the bankruptcy court's failure to even consider the underlying defamation lawsuit in Arkansas federal court was clearly erroneous, as the lawsuit is not only a fact germane to the Stanleys' bankruptcy, but is also one of the totality of the circumstances surrounding the Stanleys' Chapter 13 filing.  See Elmwood, 964 F.2d at 510; Chaffin II, 836 F.2d at 217.

Based on the totality of the timing of the bankruptcy petition, the fact that the judgment against Dorothy Stanley may not be dischargeable in a Chapter 7 proceeding, and all of the other arguments advanced by Suggs as evidence of bad faith, this Court

---

[11]In Fisher v. Jones, 311 Ark. 450, 455, 844 S.W.2d 954, 957 (1993), the Arkansas Supreme Court stated:

Collateral estoppel, or issue preclusion, requires four elements before a determination is conclusive in a subsequent proceeding: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment.

finds that the bankruptcy court's conclusion that the Stanleys met their burden of establishing that their Chapter 13 bankruptcy plan was proposed in good faith was clearly erroneous. Based on the record evidence, this Court is left with the clear impression that the Stanleys proposed Chapter 13 bankruptcy plan may very well have been a continuation of Dorothy Stanley's prior actions against Suggs. See Chaffin II, 836 F.2d at 216 (stating "[i]n cases in which he underlying fraud and a bankruptcy filing are all part of one scheme, or the debtor never intended to repay the debt, the courts have uniformly denied confirmation."). And while Chapter 13 bankruptcy relief is intended to afford honest debtors the opportunity for a fresh start, it is not intended to reward dishonest debtors or to allow debtors to carry out a dishonest scheme.

Accordingly, the bankruptcy court's orders of October 17, 2003 and December 2, 2003 overruling Suggs' objections to confirmation, denying Suggs' motion to convert the case, and granting confirmation of the Stanleys' Chapter 13 plan are **REVERSED** and this matter is **REMANDED** to the bankruptcy court for further proceedings, specifically on the issue of good faith, consistent with this Memorandum Ruling.

### III. CONCLUSION

For the reasons stated above, the bankruptcy court's order of October 17, 2003, which denied Suggs' motion to convert the case and overruled her objection to confirmation, and the order of December 2, 2003, which overruled Suggs' objection to confirmation and granted confirmation of the Stanleys' Chapter 13 bankruptcy plan, are **REVERSED**. Accordingly, this matter is **REMANDED** to the bankruptcy court for further proceedings, specifically on the issue of good faith, consistent with this Memorandum

Ruling.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 28th day of December, 2005.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE